IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIANA HILL, individually and as
mother and next friend of D.H.,

    Plaintiff,

        v.

CLAYTON COUNTY, GEORGIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-5300-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on Defendants CorrectHealth Clayton, LLC and Dr. Charles Clopton's ("Medical Defendants") Motion to Dismiss [Doc. 48] and on Defendants Clayton County, Clayton County Board of Commissioners, and Clayton County Sheriff Victor Hill's ("County Defendants") Motion to Dismiss [Doc. 49]. For the reasons set forth below, the Medical Defendants' Motion to Dismiss [Doc. 48] is GRANTED, and County Defendants' Motion to Dismiss [Doc. 49] is GRANTED in part and DENIED in part.

## I.    Background[1]

Beginning in September 2019, the Plaintiff, Tiana Hill, alleges that she was detained at the Clayton County Jail ("Jail") for a violation of probation and

---

[1] The Court accepts the facts as alleged in the Corrected Amended Complaint as true for purposes of the present Motions to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

for a pending criminal charge. (Corrected Am. Compl. ¶¶ 25–26). Upon her admission to the Jail, Hill informed the Jail staff that she was pregnant, which was noted on her intake documentation. (*Id.* ¶ 27). Hill claims that on numerous occasions between September and December 2019, she asked for prenatal care for herself and her unborn child but that she received no such care. (*Id.* ¶¶ 4–5).

On December 28, 2019, Hill claims that she "informed the jail staff that she was bleeding vaginally, that she was pregnant, and that she needed medical care" but that she was denied that care. (*Id.* ¶¶ 33–34). Then, on December 29, Hill alleges that she went into labor in her jail cell and that when she pleaded to be taken to the hospital, the Jail staff told her that she was not pregnant and to go back into her cell. (*Id.* ¶¶ 35–37). After being denied the medical care she requested, Hill claims that it was not until her fellow detainees began banging on the walls and doors of their cells to get the jail staff's attention that Hill was taken to the jail infirmary. (*Id.* ¶¶ 38–41). Hill requested that she be taken to a hospital or another medical facility more suitable for labor and child delivery, but her request was denied. (*Id.* ¶ 41).

Ultimately, Hill gave birth in the jail infirmary the following day on December 30. (*Id.* ¶ 52). Tragically, the baby, D.H., died on January 3, 2020. (*Id.* ¶ 55). As a result, Hill now brings constitutional and state law claims against Clayton County ("County"), the Clayton County Board of Commissioners ("Board"), Clayton County Sheriff Victor Hill, CorrectHealth

2

Clayton, LLC ("CorrectHealth"), Dr. Charles Clopton, and various unnamed "John Doe" Defendants. (*Id.* ¶ 9). The Medical Defendants and the County Defendants now seek the dismissal of certain claims against them.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Medical Defendants move to dismiss Hill's claims against the John Doe Defendants and her claim for false imprisonment. (Br. in Supp. of Med. Defs.' Mot. to Dismiss, at 1). The County Defendants move to dismiss all of Hill's claims against them on various grounds. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 3–4). The Court proceeds by addressing each of the Medical and County Defendants' arguments in turn.

### A.  Hill's Claims Against the John Doe Defendants

Both the Medical Defendants and the County Defendants move to dismiss Hill's claims against the John Doe Defendants. (Br. in Supp. of Med. Defs.' Mot. to Dismiss, at 1; Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 5). They argue that the practice of naming fictitious individuals or entities as parties in pleadings is not permitted in federal court. (Br. in Supp. of Med. Defs.' Mot. to Dismiss, at 2 (citing *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)); Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 5 (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997))). The Medical Defendants also argue that the limited exception for fictitious names that are "so specific as to make the fictitious name[s], at the very worst, surplusage" is inapplicable because the Corrected Amended Complaint indicates that Hill "intends to identify additional defendants who are 'not limited to deputies, jailers and medical staff members.'" (Br. in Supp. of Med. Defs.' Mot. to Dismiss, at 2–3 (quoting *Smith v. Comcast Corp.*, 786 F. App'x

4

935, 939 (11th Cir. 2019), and Corrected Am. Compl. ¶ 19)).

Indicating that she intends to file for leave to amend after she obtains names of additional parties through discovery, Hill opposes dismissal of the John Doe Defendants. (Pl.'s Resp. Br. in Opp'n to Med. Defs.' Mot. to Dismiss, at 4; Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 8–9). Hill relies primarily on *Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009), arguing that naming pseudonymous defendants does not destroy complete diversity and that she should be allowed to name anonymous defendants because she was harmed by them through no action of her own. (Pl.'s Resp. Br. in Opp'n to Med. Defs.' Mot. to Dismiss, at 4; Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 8–9). In reply, the County Defendants argue that the present case is not before the Court on diversity jurisdiction and that *Ciolli* does not otherwise support Hill's naming of John Doe Defendants in the case. (Reply Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 3).

The Court agrees with the County Defendants. The *Ciolli* case addresses only the issue of whether the existence of John Doe defendants in a case defeats diversity jurisdiction. *Ciolli*, 611 F. Supp. 2d at 219. Because Hill's constitutional claims are properly before the Court under federal question jurisdiction and because the Court may exercise supplemental jurisdiction over her state law claims, *Ciolli* does not govern the present case. Instead, the Court finds that the *Richardson* case is analogous to the present case. *Richardson*, 598 F.3d at 738. In *Richardson*, the Eleventh Circuit Court of Appeals affirmed

5

the dismissal of the plaintiff's claims against "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute," despite the fact that the plaintiff later referred to the John Doe defendant by his actual name, because the complaint's description was insufficient to identify the individual defendant. *Id.* Here, Hill's description of the "deputies, jailers, and medical staff members" is equally undescriptive, and Hill makes no allegations in her Corrected Amended Complaint that would identify any of the individuals. Under the circumstances, the Court concludes that dismissal of Hill's claims against the John Doe Defendants is appropriate.

### B. Hill's Claims for False Imprisonment

The Medical Defendants next argue that Hill's claim for false imprisonment of baby D.H. should be dismissed because D.H. was unaware of any confinement that occurred. (Br. in Supp. of Med. Defs.' Mot. to Dismiss, at 3–4). Hill argues, in response, that baby D.H.'s detention was presumptively against his will because he was under the age of consent. (Pl.'s Resp. Br. in Opp'n to Med. Defs.' Mot. to Dismiss, at 7–8 (citing *Garza v. State*, 285 Ga. App. 902, 904 (2007), *rev'd in part on other grounds*, 284 Ga. 696 (2008))).

Under Georgia law, the tort of false imprisonment is "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The essential elements of a false imprisonment claim under O.C.G.A. § 51-7-20 are a detention and its unlawfulness. *Carnegay v. WalMart Stores, Inc.*, 353 Ga. App. 656, 660 (2020)

6

(citation omitted). The Georgia Court of Appeals has established the following regarding a claim for false imprisonment under Georgia law: "Any restraint, however slight upon another's liberty to come and go as he pleases, constitutes an arrest. There is an illegal arrest and false imprisonment of another where he is detained for any length of time against his will." *Burrow v. K-Mart Corp.*, 166 Ga. App. 284, 287 (1983) (citation omitted).

The Court finds that Hill has failed to plead any facts showing that the Medical Defendants detained baby D.H. unlawfully. Baby D.H. cannot plausibly have been detained against his will because, as a newborn baby, he had no awareness of his alleged detention.[2] In addition, Hill's Corrected Amended Complaint fails to allege any facts suggesting how the Medical Defendants *unlawfully* detained baby D.H. (*See* Corrected Am. Compl. ¶¶ 197–205). Hill alleges that the Medical Defendants "did not immediately send baby D.H. to a hospital for medical care," (*Id.* ¶ 202), but she does not allege how their failure to do so was unlawful. The Medical Defendants decision against immediately sending baby D.H. to the hospital for medical care is an issue sounding in negligence and thus will be more appropriately assessed under

---

[2] The Court notes that the common law claim for false imprisonment requires an awareness on the part of the falsely imprisoned person. *May v. City of Nahunta, Ga.*, 846 F.3d 1320, 1329 (11th Cir. 2017). The Court finds that Georgia case law examining the legal standard to establish a state law claim for false imprisonment under O.C.G.A. § 51-7-20 also implies an awareness element—detention against a person's will requires an awareness of the detention in the first place. *See Burrow*, 166 Ga. App. at 287.

7

Count VI of Hill's Corrected Amended Complaint, which alleges medical malpractice. (*Id.* ¶¶ 173–96). Accordingly, the Court concludes that Hill fails to state a claim for false imprisonment of baby D.H., and thus, the claim should be dismissed as to the Medical Defendants.

### C. Hill's Claims Against the Clayton County Board of Commissioners

The County Defendants argue that the Board is not an entity that is capable of being sued and that, therefore, Hill's claims against it should be dismissed. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 4–5). In response, Hill argues that the Board is capable of being sued under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). (Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 8). The County Defendants rely on *Smith v. Bulloch Cnty. Bd. of Comm'rs*, 261 Ga. App. 667, 669 (2003), in support of their position that Hill cannot sustain her claim against the Board. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 5; Reply Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 2). In *Smith*, a woman was driving her car when she was struck and killed by an ambulance. *Smith*, 261 Ga. App. at 667. The ambulance was driven by a county employee, and the woman's parents brought a wrongful death action against the county, the county board of commissioners, and the ambulance driver. *Id.* The Georgia Court of Appeals affirmed the trial court's grant of summary judgment to the board, finding no independent basis for liability of the board under a theory of respondeat superior. *Id.* at 667, 669; *see also, Cook v. Colquitt Cnty. Bd. of Educ.*, 261 Ga. 841 (1992) ("In a long line of cases, we,

8

and the Court of Appeals, have held that a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued."). The Plaintiff fails to address *Smith*. The Plaintiff has also sued the County which is the proper Defendant here if there is respondeat superior (*Monell*) liability. Accordingly, the County Defendants' Motion to Dismiss should be granted as to the Board.

### D. Hill's Claims Against Clayton County

The County Defendants next argue that Hill's federal claims against the County should be dismissed for failure to state a claim under *Monell* and that her state law claims against the County are barred by sovereign immunity. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 3, 5–12). The Court addresses each of these arguments and Hill's responses in turn.

#### 1. Federal Claims Against the County

Regarding Hill's federal claims, the County Defendants argue that the claims should be dismissed (1) because she fails to allege a constitutional violation by any County employee and (2) because she fails to allege facts sufficient to establish *Monell* liability. (*Id.* at 5–6). The County Defendants cite to two Eleventh Circuit cases in support of their proposition that the complaint must allege that a County employee committed the underlying constitutional violation to state a claim under § 1983. (*Id.* (citing *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009), and *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007)). The Court does not, however, read these cases as establishing

that "[a]bsent an underlying constitutional violation by one of its employees, the County cannot be held liable under Section 1983." (*Id.*). Rather, both cases stand for the proposition that absent allegations establishing a constitutional violation itself, a plaintiff cannot state a claim for relief under § 1983. *Eslinger*, 555 F.3d at 1237 ("If no constitutional right would have been violated were the [complaint's] allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Beshers*, 495 F.3d at 1264 n.7 ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."). Accordingly, the Court concludes that the County Defendants are not entitled to dismissal of Hill's federal claims against the County on this ground.

The County Defendants next argue that Hill's federal claims against the County should be dismissed because she fails to allege facts sufficient to establish *Monell* liability. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 6). They argue that Hill fails to "demonstrate through specific factual allegations that the County, through its 'deliberate conduct,' was the '"moving force" behind the injury alleged.'" (*Id.* at 7 (quoting *Jernard v. Owens*, 2012 WL 2131117, at *5–6 (M.D. Ga. May 10, 2012))).

Under *Monell*, a local government body is liable under § 1983 when the execution of its policy or custom constitutes the "moving force" that inflicts injury upon an individual in violation of her constitutional rights. *Monell*, 436 U.S. at 694. To state a claim for § 1983 liability against a municipality or other

10

local government entity, a plaintiff must allege plausible facts showing (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to her constitutional rights, and (3) that the custom or policy caused her constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Hill relies primarily on the case of *Kimbell v. Clayton Cnty., Ga.*, 2005 WL 7861525 (N.D. Ga. Sept. 27, 2005), in support of her position that the County had a policy of not funding or providing medical care to pregnant detainees. (Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 11–13). The County Defendants argue that the court's reasoning in *Kimbell* supports dismissal of Hill's *Monell* claims. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 9–11; Reply Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 6–8). Before addressing the three prongs required to establish *Monell* liability as applied to the present case, the Court proceeds with a summary of *Kimbell*.

The *Kimbell* case involved the tragic death of Kassandra Kimbell in late January 2003, while she was in custody at the Clayton County jail. *Kimbell*, 2005 WL 7861525, at *1–7. Kimbell was pregnant at the time of her death, and an autopsy determined her cause of death to be a "massive acute intra-abdominal hemorrhage, due to a ruptured ectopic pregnancy." *Id.* at *6. Kimbell was admitted to the jail in late December 2002, but the parties never found a record of Kimbell's initial health assessment upon admission to the jail, which was required by the national standards for correctional health care.

11

*Id.* On the day before her death, Kimbell began presenting a number of symptoms related to the ectopic pregnancy. *Id.* at *1. Kimbell's interactions with the jail staff and medical staff in the time leading up to her death ultimately gave rise to the claims in the underlying lawsuit. *Id.* at *1–7. Kimbell's estate named Clayton County as a defendant in the lawsuit, arguing that the county denied her statutorily mandated health care, which violated her constitutional rights and ultimately caused her death. *Id.* at *9. Kimbell's estate argued (1) that the county's policy of under-staffing caused her lack of medical care and death and (2) that the county was negligent per se in its custom of providing inadequate medical care. *Id.* at *10, *17.

Regarding the first argument, the court determined "that Kimbell's Eighth Amendment rights were violated by virtue of the delay in transporting her to the Jail's infirmary for treatment and diagnosis," satisfying the first prong of her estate's § 1983 claim. *Id.* at *11. And the court also assumed, weighing evidence of under-funding and under-staffing, that the estate produced sufficient evidence of a custom of under-staffing within the jail. *Id.* Nonetheless, the court ultimately granted summary judgment to the county, concluding that the county's policy of under-staffing was not the "moving force" behind the violation of Kimbell's constitutional rights regarding the delay in her receiving medical care. *Id.* at *15. Specifically, the court noted that *Kimbell* was "not a case where jail personnel recognized the seriousness of [her] condition and attempted to obtain medical treatment, but were stymied in that

12

effort because of delays caused by under-funding or under-staffing," nor was it a case "where, because of a lack of staffing, jail personnel were too busy with other inmates or duties to be aware of what was going on with an inmate." *Id.* Rather, Kimbell's "death resulted because a particular employee or employees did not take appropriate action in response to [her] repeated pleas for medical intervention." *Id.* Under those circumstances, the court found no genuine issue of material fact as to the issue of causation and thus found in favor of the county on the first argument. *Id.*

Regarding the second argument, the court briefly considered whether Kimbell's estate showed that the county had a policy or custom of providing inadequate medical care. *Id.* at *17. The court ultimately concluded that although Kimbell's estate cited to "a couple of examples of inmates who had trouble getting their medication in a timely fashion, [the] isolated incidents [did] not suggest a pattern that would have put the County on notice that [the third-party medical care vendor] was providing constitutionally inadequate care." *Id.* For those reasons, the court found no genuine issues of material fact as to the county's *Monell* liability and ultimately granted summary judgment in favor of the county on all federal claims. *Id.*

Having summarized the *Kimbell* case, the Court now turns to the first prong of the test required to establish *Monell* liability: whether Hill plausibly alleges a violation of her constitutional rights. In her Corrected Amended Complaint, Hill alleges that the County violated both her and baby D.H.'s

13

Eighth and Fourteenth Amendment rights and also baby D.H.'s Fourth Amendment rights.[3] (Corrected Am. Compl. ¶¶ 62, 69, 157). As a preliminary matter, the Corrected Amended Complaint alleges that Hill was incarcerated "for a probation violation and for a pending criminal charge." (Corrected Am. Compl. ¶ 26). The Court agrees with Hill that her federal claims against the County (and all Defendants) are therefore properly stated under both the Eighth and Fourteenth Amendments. (*Id.*); s*ee also Kimbell*, 2005 WL 7861525, at *10 (citing *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Because the standard for violation of a convicted detainee's rights under the Eighth Amendment is the same as the standard for violation of a pre-trial detainee's rights under the Fourteenth Amendment, the Court considers the claims collectively. *Belcher*, 30 F.3d at 1396.

The Eighth Amendment prohibition on cruel and unusual punishment encompasses the right of incarcerated people to receive medical treatment, and any "deliberate indifference to serious medical needs of prisoners constitutes"

---

[3] The County Defendants do not specifically address Hill's Fourth Amendment claims on behalf of baby D.H. in either of their briefs, but they argue that all of Hill's federal claims against the County should be dismissed for failure to allege facts supporting *Monell* liability. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 6). With regard to the Fourth Amendment claim, the Court agrees. Hill alleges that the "denial of freedom to baby D.H. after his birth was an unlawful seizure in violation of his [Fourth] Amendment rights," (Corrected Am. Compl. ¶ 69), but Hill does not allege that the County had a policy or custom of unlawfully seizing newborns after their birth at the Jail in violation of their constitutional rights. Thus, the Court concludes that Hill fails to state a claim premised upon a violation of baby D.H.'s Fourth Amendment rights against the County.

a violation of that right. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such deliberate indifference applies to the actions of both prison guards in denying or delaying access to medical care and medical professionals in providing health care to incarcerated individuals. *Id.*

Construing the facts as pleaded in the Corrected Amended Complaint in the light most favorable to Hill, the Court concludes that Hill has adequately pleaded a violation of her constitutional rights under the Eighth and Fourteenth Amendments. Specifically, the Court finds that Hill's allegations of her denied requests for prenatal care over a period of more than three months and the thirteen-hour delay in her transfer to the hospital after being admitted to the Jail infirmary before giving birth plausibly allege a deliberate indifference to her serious medical needs. (Corrected Am. Compl. ¶ 4–7). Hill's allegations are analogous to the violation of Eighth Amendment rights at issue in *Kimbell* where the Northern District found a violation "by virtue of the delay in transporting [Kimbell] to the Jail's infirmary for treatment and diagnosis." *Kimbell*, 2005 WL 7861525, at *11. Thus, Hill sufficiently pleads facts to establish the first prong of her § 1983 claim under the Eighth and Fourteenth Amendments against the County.

Turning to the second prong of Hill's § 1983 claim under *Monell*, the Court considers whether the County had a custom or policy that constituted deliberate indifference to Hill's constitutional rights. Hill argues that the County had a policy of not funding or providing medical care to pregnant

15

detainees. (Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 11). The County Defendants contend that Hill's argument is undercut by her claims against the Medical Defendants, which contemplate the provision of medical care to individuals who are detained at the Jail. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 7–8 (quoting Corrected Am. Compl. ¶¶ 16–17, 155, 175)). The County Defendants allude specifically to Hill's claims that the County medical staff contacted Dr. Clopton when Hill arrived at the Jail's infirmary, that Dr. Clopton was given detailed information on Hill's condition, and that Hill's medical screening records from her intake support those facts. (*Id.* (quoting Corrected Am. Compl. ¶¶ 122–123; Docs. 42-1, 42-7)). Taken together, the County Defendants argue that Hill's claims against the County amount to implausible and conclusory allegations that are merely naked assertions devoid of factual enhancement. (*Id.* at 8–9).

Having summarized the parties' arguments regarding the second prong, the Court notes that Hill's allegations in her Corrected Amended Complaint contemplate more than the sheer *absence* of funding or provision of medical care to pregnant detainees. Rather, like the allegations at issue in *Kimbell*, 2005 WL 7861525, at *17, Hill's allegations hinge on the *adequacy* of that medical care, specifically in the prenatal context. (*See, e.g.*, Corrected Am. Compl. ¶ 156 ("Defendant Clayton County took no action to address the *deficiency* of medical care[,] nor did [the County] correct the policy and custom of *not caring for pregnant detainees* as evidenced by the pain and suffering of

16

Ms. Tiana Hill and death of baby D.H." (emphasis added))). Construing the allegations in the light most favorable to Hill, the Court concludes that Hill has plausibly pleaded a custom of providing inadequate prenatal care to pregnant detainees that constituted deliberate indifference to her constitutional rights. Contrary to the County Defendants' contention, Hill also pleads facts that, if true, plausibly support a custom of inadequate prenatal care to pregnant detainees, claiming for example that she "repeatedly requested prenatal care but received no medical attention for her pregnancy." (Corrected Am. Compl. ¶ 5). If Hill, in fact, requested prenatal care for more than three months but received no such care, such allegations state a plausible claim for a violation of her Eighth and Fourteenth Amendment rights. If the County, during discovery, produces health records showing that Hill received prenatal care while detained, however, such evidence would likely be sufficient to refute Hill's allegations. Nonetheless, at the motion to dismiss stage, the allegations themselves are sufficient.

In addition, Hill alludes to two other sources to support her contention that the County had a custom of providing inadequate prenatal care to pregnant detainees at the Jail. (Corrected Am. Compl. ¶¶ 80–83). First, Hill provides the sworn affidavit of Ms. Lauren Law, who claims that while she was detained at the Jail in 2017, she "personally witnessed a lady who appeared to be 7 to 8 months pregnant repeatedly ask for food and medication" and "witnessed the jail staff repeatedly deny her food, medication, and medical

17

attention." (*Id.* ¶ 82; Doc. 42-5, at 1). Second, Hill provides the sworn affidavit of Ms. Christine Richardson, a licensed practical nurse who worked at the Jail in 2018 and who claimed that the Jail had (1) a lack of adequate health assessments of women during their jail intake, (2) a lack of health services for pregnant women, (3) a lack of access for women to obstetrical-gynecological services, and (4) a lack of nursing staff. (Corrected Am. Compl. ¶ 83; Doc. 42-6, at 1). Richardson also claims that she "personally spoke with Sheriff Victor Hill on numerous occasions concerning" the deficiencies in prenatal health services for pregnant women at the Jail, stressing "the seriousness of the perilous [J]ail conditions and the need for [an] immediate remedy." (Doc. 42-6, at 1). But Richardson claims that, to her knowledge, "Sheriff Hill took no action to correct the deficiencies." (*Id.* at 2).

Taking Hill's factual allegations concerning her personal experience at the Jail and the experiences of Law and Richardson at the Jail and construing those allegations in the light most favorable to Hill, the Court cannot conclude as a matter of law that Hill fails to plead a custom of inadequate prenatal care to pregnant detainees at the Jail. As the litigation progresses, these allegations and the evidence underlying them may ultimately prove insufficient, but they are more than just a "threadbare recital" of the elements to establish *Monell* liability and are therefore sufficient here at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678. Thus, Hill sufficiently pleads facts to establish the second

prong of her § 1983 claim.[4]

Finally, regarding the third prong of Hill's § 1983 claim under *Monell*, the Court considers whether the County's custom of providing inadequate prenatal care to pregnant detainees *caused* (or was the "moving force" behind) her constitutional violation—the County's deliberate indifference to her serious medical needs. The court in *Kimbell* found that the county's custom of under-staffing did not cause Kimbell's constitutional violation because "the delay in Kimbell's access to medical care at the infirmary was caused, not by a lack of staff, but by arguably poor decisions made by the members of this staff." *Kimbell*, 2005 WL 7861525, at *15. The Court finds that Hill's allegations here

---

[4] The County Defendants argue that Hill's § 1983 claims under *Monell* against the County should be dismissed because she fails to identify any instances, other than the *Kimbell* case, of widespread abuse. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 9–10 (citing *Hawk v. Klaetsch*, 522 F. App'x 733, 735 (11th Cir. 2013), *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998), and *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986))). Notably, none of the cases that the County Defendants cite in support of their contention occurred at the motion to dismiss stage, and two of the cases involved the issue of supervisory liability, not *Monell* liability, in the § 1983 context, which is inapplicable here. Further, the Eleventh Circuit in *Depew* stated that "[t]o establish a policy or custom, it is *generally* necessary to show a persistent and wide-spread practice." *Depew*, 787 F.2d at 1499 (emphasis added). But the court concluded that the plaintiff presented sufficient evidence to support the jury's finding of a custom or policy of improper police misconduct. *Id.* Here, whether the County in fact had a custom (or widespread practice) of providing inadequate prenatal care to pregnant detainees is a question properly resolved at a later stage in this case. And in addition, Hill cites to the affidavits of Law and Richardson in her Corrected Amended Complaint, which support her allegations of a practice of inadequate prenatal care for pregnant detainees at the Jail. Thus, the Court finds the County Defendants' argument on widespread abuse unpersuasive.

are distinguishable from the allegations in *Kimbell*. Importantly, allegations of inadequate prenatal care for pregnant detainees, at the very least, could have plausibly caused the harm that Hill and baby D.H. suffered. Thus, the Court concludes that Hill sufficiently pleads facts to establish the third prong of her § 1983 claim against the County, and accordingly, both Hill and baby D.H. plausibly state a § 1983 claim under the Eighth and Fourteenth Amendments against the County.[5]

### 2. State Law Claims Against the County

The County Defendants next argue that sovereign immunity bars Hill's state law claims against the County, including her claim for false imprisonment of baby D.H. and her claim for liability for negligence of a contractor.[6] (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 11–12; Corrected Am. Compl. ¶¶ 204, 211). Hill does not address the County Defendants' arguments in her response brief. (*See* Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 9–13). The County Defendants argue that Hill's failure to address the arguments constitutes abandonment of the claims. (Reply Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 9).

---

[5] The County Defendants provide no authority suggesting that baby D.H. cannot state a claim for violation of his Eighth and/or Fourteenth Amendment rights against the County under *Monell*. Thus, the Court concludes that these claims proceed absent authority to the contrary.

[6] The Court notes that Hill's claim for false imprisonment and her claim for liability for negligence of a contractor are both labeled as "Count VII" in the Corrected Amended Complaint. (Corrected Am. Compl., at 39–40).

The Constitution of the State of Georgia extends sovereign immunity to "the state and all of its departments and agencies," including sheriffs and counties. Ga. Const. art. I, § II, ¶ IX(e); *Gilbert v. Richardson*, 264 Ga. 744, 747 (1994). In addition, "[a] county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4. The Court agrees with the County Defendants that Hill's state law claims against the County are barred by sovereign immunity. Thus, Hill fails to state a claim for false imprisonment and for liability for negligence of a contractor against the County.

### E. Hill's Claims Against Sheriff Hill in His Official Capacity

The County Defendants move to dismiss the claims against Sheriff Hill in his official capacity, arguing that the federal claims are barred by Eleventh Amendment immunity and that the state law claims are barred by sovereign immunity. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 12–15). Regarding the former, the County Defendants argue that the Eleventh Amendment bars all of Hill's claims against Sheriff Hill in his official capacity because he was acting as an "arm of the State," and regarding the latter, they argue that sovereign immunity bars Hill's state law claims against Sheriff Hill for the same reasons as her state law claims against the County. (*Id.* (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), and *Seay v. Cleveland*, 270 Ga. 64, 65 (1998))). In response, Hill argues that Sheriff Hill's operation of "an unsanctioned paramilitary jail" falls outside the control of the State of Georgia, that Sheriff Hill is liable for the misconduct of his jail staff, and that Sheriff

21

Hill had a duty to feed and care for all persons charged with violating county ordinances. (Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 13–14 (citing *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231–34 (11th Cir. 2000), and O.C.G.A. §§ 15-16-24, 15-16-10)).

The Eleventh Amendment bars suits against government officials when they act as "arms of the State." *Manders*, 338 F.3d at 1308 (citation omitted). And the Eleventh Circuit Court of Appeals has set forth four factors to determine whether an official constitutes an "arm of the State" when carrying out a particular government function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. Applying the four factors, the Eleventh Circuit in *Manders* determined that the Clinch County sheriff acted as an arm of the State in establishing a use-of-force policy at the jail and in training and disciplining his deputies under the policy. *Id.* at 1328. Under the test, the first three factors weighed in favor of immunity because the sheriff's authority to use force was derived from and controlled by the State and because the sheriff's office was partially funded by the state. *Id.* at 1319–24. And the fourth factor "d[id] not defeat immunity" because both state and county funds would be implicated by an adverse judgment against the sheriff in his official capacity. *Id.* at 1324–29. Therefore, the Georgia sheriff in *Manders* was entitled to Eleventh Amendment immunity. *Id.* at 1328.

The brevity of the parties' briefing on the issue of Eleventh Amendment immunity as applied to Georgia county sheriffs posed at present does not reflect the mountain of existing Eleventh Circuit case law on the issue. *See e.g.*, *id.* (finding a Georgia sheriff acted as an arm of the State in establishing and maintaining a use-of-force policy and thus was entitled to immunity); *Lake v. Skelton ("Lake I")*, 840 F.3d 1334, 1344 (11th Cir. 2016) (finding a Georgia deputy sheriff acted as an arm of the State in failing to accommodate a vegetarian dietary request from a detainee and thus was entitled to immunity); *Lake v. Skelton ("Lake II")*, 871 F.3d 1340, 1344 (11th Cir. 2017) (en banc) (denying rehearing of the Eleventh Circuit's 2016 panel opinion in *Lake I*). Most relevantly, in *Lake I*, the Eleventh Circuit revisited its decision in *Manders*, applying the four-factor test to determine that a Cobb County deputy sheriff acted as an arm of the State in providing food to jail detainees and was therefore entitled to Eleventh Amendment immunity. *Lake I*, 840 F.3d at 1339–44. Notably, though the Eleventh Circuit in *Manders* indicated that the sheriff's provision of food to detainees would not constitute acting as an arm of the State, the majority panel in *Lake I* nonetheless found that such activity indeed constituted action as an arm of the State. *Manders*, 338 F.3d at 1319, 1323 n.43; *Lake I*, 840 F.3d at 1344; *see also Brooks v. Wilkinson Cnty., Ga.*, 393 F. Supp. 3d 1147, 1159 (M.D. Ga. 2019) (summarizing the Eleventh Circuit's application of the four *Manders* factors in *Lake I*).

The Eleventh Circuit's opinions in *Manders* and *Lake I* have garnered a considerable amount of scrutiny in their approach to the four *Manders* factors and their ultimate effect on plaintiffs' § 1983 claims. *See, e.g.*, *Manders*, 338 F.3d at 1347 (Barkett, J., dissenting) ("By inventing a previously unknown function as the purported focus of its analysis, the majority [in *Manders*] trades the clarity to be found in the Georgia law of county jails for a blur of inference and speculation. The upshot is a substantial blow to established law assuring citizens' ability to hold local governments accountable for violations of the United States Constitution."); *Lake I*, 840 F.3d at 1345 (Parker, J., dissenting) ("The majority [in *Lake I*] . . . los[es] sight of the principal purpose behind the Eleventh Amendment—not implicated here—of protecting the State's purse from federal-court judgments absent consent to suit. The result is a decision that significantly expands the reach of sovereign immunity and will leave Georgia counties unanswerable for constitutional violations predicated on their failure to provide food or any of the other necessities required by [O.C.G.A.] § 42-5-2."); *Lake II*, 871 F.3d at 1344 (Martin, J., dissenting from denial of rehearing en banc) ("[T]he *Lake [I]* panel opinion is a dramatic expansion of what had until now been a narrow reach of sovereign immunity into the administration of Georgia county jails. For the 50,000 people detained in county jails across the state of Georgia, the consequences of the panel's holding are large."). Such scrutiny, however, has not been so considerable as to result in a revisiting of and departure from the Eleventh Circuit's approach in

24

*Manders* and *Lake I.*

In the wake of *Manders* and *Lake I,* several federal district courts in Georgia have found that the cases operate to bar a plaintiff's § 1983 claim against a Georgia county sheriff accused of failing to provide constitutionally mandated medical care to a detainee. *See, e.g., Palmer v. Correct Care Sols., LLC*, 291 F. Supp. 3d 1357, 1360 (M.D. Ga. 2017); *Brooks*, 393 F. Supp. 3d at 1160; *McRae v. Telfair Cnty., Ga.*, 2020 WL 5608637, at *4–6 (S.D. Ga. Sept. 18, 2020). *But see Dukes v. State of Georgia*, 428 F. Supp. 2d 1298, 1318–22 (N.D. Ga. 2006) (finding, in a case predating *Lake I*, that a Georgia sheriff was not acting as an arm of the State when providing medical care to detainees in county jail), *aff'd*, 212 F. App'x 916 (11th Cir. 2006). In *Palmer*, the plaintiff suffered injuries due to inadequate medical care for his sickle cell disease while detained at the Muscogee County jail, and he brought a § 1983 claim against the Muscogee County sheriff in his official capacity, among other claims against other defendants. *Id.* The sheriff sought dismissal of the claims against him in his official capacity on Eleventh Amendment grounds under *Manders* and *Lake I. Id.*

With reservations as to whether its analysis reached the proper constitutional result but without hesitation as to whether the result was required under binding precedent, the U.S. District Court for the Middle District of Georgia in *Palmer* found "no distinction for Eleventh Amendment purposes between a county sheriff feeding county detainees in a county jail and

25

a county sheriff taking care of the medical needs of those same county detainees in that same county jail." *Id.* at 1362. The Middle District in *Palmer* proceeded to address each of the four *Manders* factors "for the sake of thoroughness" but reiterated its key holding that the Muscogee County sheriff was entitled to immunity because the provision of medical care at issue in the case was indistinguishable from the provision of food at issue in *Lake I* for Eleventh Amendment purposes. *Id.*

Here, the Court agrees with the Middle District in *Palmer* and in *Brooks* that it was likely unnecessary for the *Palmer* court to conduct its own *Manders* analysis in light of *Lake I*. *Id.*; *Brooks*, 393 F. Supp. 3d at 1160 ("[I]n an effort to avoid reinventing the wheel (particularly a wheel as well made as *Palmer*), the Court will rest its decision on the proposition that 'because the provision of medical care cannot be distinguished from the provision of food for Eleventh Amendment purposes, *Lake [I]* requires a finding of immunity in this case.'" (quoting *Palmer*, 291 F. Supp. 3d at 1362)). Therefore, the Court concludes that a Georgia county sheriff acts as an arm of the State in providing medical care to detainees and thus is entitled to Eleventh Amendment immunity. [7] Accordingly, Sheriff Hill is entitled to Eleventh Amendment immunity in this case, and Hill fails to state a claim against Sheriff Hill in his official capacity.

---

[7] Because Sheriff Hill is entitled to Eleventh Amendment immunity under *Manders* and *Lake I* for all claims asserted against him in his official capacity, the Court declines to address whether he is entitled to state sovereign immunity for Hill's state law claims against him in his official capacity.

### F. Hill's Claims Against Sheriff Hill in His Individual Capacity

The County Defendants next move to dismiss the claims against Sheriff Hill in his individual capacity, arguing that the federal claims are barred by qualified immunity and that the state law claims are barred by official immunity. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 15–23). Hill argues, in response, that Sheriff Hill is not entitled to qualified immunity because he acted in violation of her constitutional rights and because those actions caused her injuries. (Pl.'s Resp. Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 15–22). The Court addresses each of these arguments and Hill's responses in turn.

#### 1. Federal Claims Against Sheriff Hill Individually

Regarding Hill's federal claims, the County Defendants first argue that the claims against Sheriff Hill in his individual capacity should be dismissed because Hill fails to allege a constitutional violation by Sheriff Hill and fails to allege a causal connection between Sheriff Hill's actions and any violation of her constitutional rights. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 17).[8] The Eleventh Circuit has established that supervisors can be held liable for the constitutional violations of their subordinates under § 1983 "when the supervisor personally participates in the alleged constitutional violation or

---

[8] The County Defendants also argue here that the claims should be dismissed because Hill fails to allege a constitutional violation by any County employee. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 16). For the same reasons discussed in Section III.D.1 above in the context of Hill's federal claims against the County, the Court finds this argument unpersuasive.

when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (citation omitted). Hill does not appear to allege that Sheriff Hill personally participated in her alleged constitutional violation; thus, the question here is whether she sufficiently alleges a causal connection between Sheriff Hill's actions and her constitutional deprivation.

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Id.* Only the first two showings of causal connection are at issue here.

The County Defendants argue that Hill fails to allege facts plausibly supporting a claim under either of the two showings of causal connection. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 18).[9] They first contend that Hill fails to allege facts showing a "history of widespread abuse" that put Sheriff Hill on notice of the need to correct Hill's alleged deficiency at the Jail or a "pattern of similar constitutional violations." (*Id.* (quoting *Watkins v. Willson*,

---

[9] The County Defendants do not specifically address Hill's Fourth Amendment claim on behalf of baby D.H. against Sheriff Hill in his individual capacity. The Court concludes that Hill fails to plausibly allege a causal connection sufficient to establish Fourth Amendment liability against Sheriff Hill. Thus, Hill's claims against Sheriff Hill in his individual capacity premised upon a violation of baby D.H.'s Fourth Amendment rights are dismissed.

824 F. App'x 938, 941 (11th Cir. 2020))). The County Defendants also contend that Hill fails to allege facts showing that a custom or policy of Sheriff Hill resulted in deliberate indifference to Hill's constitutional rights. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 18).

As discussed above in Section III.D.1 regarding *Monell* liability, the Court concludes that Hill has indeed plausibly alleged facts indicating a custom of providing inadequate prenatal care to pregnant detainees at the Jail. Further, Hill also alleged facts indicating that Sheriff Hill was on notice of the deficiency in prenatal care for pregnant detainees but failed to take corrective action, such that the custom is attributable to his inaction. (Corrected Am. Compl. ¶ 80–84). Such allegations support a plausible claim that Sheriff Hill had a custom of providing inadequate prenatal care to pregnant detainees at the Jail and that Sheriff Hill's custom violated Hill's constitutional right to receive medical treatment while being detained. *See Estelle*, 429 U.S. at 104. Accordingly, the Court concludes that Hill has adequately pleaded causal connection, and thus, Sheriff Hill is not entitled to dismissal of Hill's § 1983 claim against him on that ground.

The County Defendants next argue that even if Hill sufficiently alleges a constitutional violation attributable to Sheriff Hill, her federal claims against Sheriff Hill in his individual capacity should be dismissed because he did not violate any clearly established law and is therefore entitled to qualified immunity. "Qualified immunity protects government officials performing

discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). "Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation marks, alteration, and citation omitted). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (quotation marks and citation omitted). As with any other motion to dismiss, the alleged facts are accepted as true, and all inferences are drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "[o]nce an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* Indeed, "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks, alteration, and citation omitted). To overcome the qualified immunity defense, Hill must make two showings in her Corrected Amended Complaint: (1) that Sheriff Hill violated a constitutional right, and (2) that the right in question was clearly established at the time of its violation. *See Corbitt*, 929 F.3d at 1311.

As established above in this Section regarding Sheriff Hill's supervisory liability, the Court concludes that Hill has adequately alleged facts supporting a plausible claim that Sheriff Hill violated her constitutional right to receive medical treatment under the Eighth and Fourteenth Amendments, and those rights were indeed clearly established at the time of the alleged violation. *See Estelle*, 429 U.S. at 104. Accordingly, the Court concludes that Sheriff Hill is not entitled to dismissal of Hill's federal claims against him in his individual capacity on the ground of qualified immunity.

### 2. State Law Claims Against Sheriff Hill Individually

Regarding Hill's state law claims against Sheriff Hill in his individual capacity, the County Defendants argue that the claims should be dismissed because they are barred by official immunity. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 21). The County Defendants also argue that the claims should be treated as abandoned and therefore subject to dismissal because Hill offered no opposition to Sheriff Hill's claim of official immunity in her response brief. (Reply Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 14).

Under Georgia's official immunity doctrine, state officials may be held liable for their ministerial acts performed negligently but are immune from liability for their discretionary acts unless they acted "with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d). The County Defendants claim that Hill's allegations implicate Sheriff Hill's discretionary functions, in that they are

premised on his responsibility for supervising the Jail. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 22 (citing *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003), *disapproved of on other grounds by City of Richmond Hill v. Maia*, 301 Ga. 257 (2017))). The Court agrees. Sheriff Hill's failure to ensure the provision of adequate prenatal care to pregnant detainees was more so an "exercise of personal deliberation and [lack of] judgment," as opposed to a simple, absolute, or definite task. *Schmidt v. Adams*, 211 Ga. App. 156, 157 (1993). Therefore, Sheriff Hill is entitled to official immunity on Hill's state law claims against in him in his individual capacity unless he acted with actual malice.

Under Georgia law, the actual malice standard is a demanding one that "requires an officer to act with a deliberate intention to do a wrongful act"; unreasonable or even recklessly illegal conduct does not support such an inference. *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quotation marks and citation omitted). Importantly, "the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff." *Campbell v. Goode*, 304 Ga. App. 47, 49 (2010). The Court agrees with the County Defendants that Hill fails to allege facts showing that Sheriff Hill intended to cause the harm that Hill suffered. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 23). Accordingly, Sheriff Hill is entitled to official immunity on Hill's state law claims against him in his individual capacity.

### G. Hill's Claims for Punitive Damages and Attorney's Fees

Finally, the County Defendants move to dismiss Hill's claims for punitive damages and attorney's fees. (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 24–25). As to the former, the Court agrees. *See Brantley v. Jones*, 363 Ga. App. 466, 473 (2022) ("Georgia law does not permit punitive damages against a governmental entity."); *D.D.T. by & through S.C. v. Rockdale Cnty. Pub. Sch.*, 580 F. Supp. 3d 1314, 1350 (N.D. Ga. 2021). Thus, to the extent Hill seeks to recover punitive damages from government entities—the County, the Board, and Sheriff Hill in his official capacity—those claims are dismissed. As to the latter, the Court disagrees. *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."). Thus, Hill's claim for attorney's fees may proceed.

## IV.   Conclusion

For the reasons set forth above, the Medical Defendants' Motion to Dismiss [Doc. 48] is GRANTED, and the County Defendants' Motion to Dismiss [Doc. 49] is GRANTED in part and DENIED in part. The County Defendants' Motion to Dismiss is GRANTED as to: the claims against the John Doe Defendants; all claims against the Board; the Fourth Amendment and state law claims against the County; all claims against Sheriff Hill in his official capacity; the Fourth Amendment and state law claims against Sheriff Hill in

his individual capacity; and the claims for punitive damages against the County and Sheriff Hill in his official capacity. The County Defendants' Motion to Dismiss is DENIED as to: the Eighth and Fourteenth Amendment claims against the County and Sheriff Hill in his individual capacity; the claim for punitive damages against Sheriff Hill in his individual capacity; and the claim for attorney's fees.

SO ORDERED, this ___9th___ day of December, 2022.


THOMAS W. THRASH, JR.
United States District Judge